IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00559-BO-RJ

| | |
|---|---|
| DELBERT QUILLEN WARD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **MEMORANDUM IN SUPPORT OF** ) **CITY'S MOTION TO DISMISS** ) |
| THE CITY OF RALEIGH, | ) ) |
| Defendant. | ) |

This matter is before the Court on a motion to dismiss filed by Defendant City of Raleigh (the "City"), pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Plaintiff asserts two claims in his action, and both are barred as a matter of law. He asserts a § 1983 claim against the City based on *respondeat superior* liability—grounds precluded under existing law. Governmental immunity bars his remaining State law battery claim. Because his claims are barred, this action should be dismissed.

## NATURE OF THE CASE

This case arises out of Plaintiff's arrest on August 28, 2020, after violating a curfew order establishing an 11:00 p.m. emergency curfew. (*See* Compl., ECF No. 1-3, ¶¶ 1, 8–11.) Plaintiff admits he violated the curfew order. (*Id.* at ¶ 13.)

Plaintiff filed this action in Wake Superior Court on December 13, 2022, but did not serve the City until September 12, 2023. (*See* ECF No. 1, ¶ 2.) The City is the sole defendant. Plaintiff asserts a claim against the City under 42 U.S.C. § 1983 and a battery claim under North Carolina law. He seeks compensatory damages, punitive damages, and attorney's fees.

On October 9, 2023, the City removed the action to federal court. (Compl., ECF No. 1.) The Court extended the time for responsive pleadings to November 15, 2023, (ECF No. 6), and the City has now filed a motion to dismiss.

**STATEMENT OF FACTS**

According to the Complaint,[1] Plaintiff was attending a racial justice protest in downtown Raleigh and arrived around 10:00 p.m. on August 28, 2020. (*See* Compl., ECF No. 1-3, ¶¶ 6–7.) The City had imposed an 11:00 p.m. emergency curfew.[2] *Id.* at ¶ 8. At 11:30 p.m., roughly 300–400 protestors, including Plaintiff, remained in downtown Raleigh. (*Id.* at ¶¶ 8, 10–11.) After realizing that the organizers of the protest had departed, Plaintiff and other protesters also decided to depart. (*Id.* at ¶ 11.)

Plaintiff was located "around Nash Square" and saw a protester to his right throw a water bottle at the Raleigh Special Weapons and Tactical Unit ("SWAT"). (*Id.* at ¶¶ 13–14.) SWAT officers responded, but in the wrong direction. (*Id.* at ¶ 15.) Plaintiff stopped, began recording an interaction between SWAT officers and another person, and was told harshly by officers that Plaintiff needed to leave. (*Id.* at ¶¶ 16–19.) Raleigh police officers then began chasing Plaintiff, while simultaneously firing flash bang devices and pepper balls. (*Id.* at ¶ 20.)

Plaintiff ran "throughout Downtown Raleigh" with twenty police officers pursuing him. (*Id.* at ¶¶ 21–22.) He turned down an alleyway and was slightly struck by a side mirror of a police vehicle. A police officer ran to Plaintiff and ordered him to "stop and put his hands up." Plaintiff immediately put his hands up and walked at a slow pace. (*Id.* at ¶¶ 23–25.) According to the

---

[1] As Rule 12(b)(6) requires, the factual allegations related to Plaintiff's § 1983 claim are recited from the Complaint. This does not mean that the City agrees with those allegations or that bodyworn camera recordings will support them.

[2] Violation of an emergency curfew order is a criminal offense, punishable as a misdemeanor. N.C. Gen. Stat. §§ 14-288.20A and 166A-19.31.

Complaint, Raleigh police officer Brown rushed Plaintiff, picked him up, tackled him, and slammed him so that the back of Plaintiff's head hit the pavement. (*Id.* at ¶ 26.) Five other officers jumped on Plaintiff and placed their knees on his neck and arms and struck him in the sides. (*Id.* at ¶¶ 27–28.) Plaintiff was arrested, though the exact charge, violating the emergency curfew, was not determined until a later time, and differed from the charge initially explained to Plaintiff. (*Id.* at ¶¶ 32–33, 50, 53.)

Plaintiff's property was damaged in a search incident to arrest. (*Id.* at ¶ 31.) Plaintiff was injured and transported so that he could receive emergency medical assistance from an EMT. (*Id.* at ¶ 34.) After seeing the EMT, Plaintiff taken to jail. (*Id.* at ¶ 37.) He was denied appropriate medical care while at the jail. (*Id.* at ¶¶ 42, 46–49.) No one provided Miranda warnings to the Plaintiff. (*Id.* at ¶ 58.) Plaintiff alleges that he suffered injuries including a strained shoulder, severe concussion, lacerations on his right knee and elbow, as well as contusions. (*Id.* at ¶¶ 62–63.) Plaintiff continues to experience severe symptoms related to his head injury and has experienced an exacerbation of his depression. (*Id.* at ¶¶ 65–69.)

## ARGUMENT

### I. PLAINTIFF'S CLAIM UNDER 42 U.S.C § 1983 FAILS AS A MATTER OF LAW.

Any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who deprives another of a constitutional right faces liability under 42 U.S.C. § 1983. In *Monell*, the Supreme Court held that municipalities may also be liable as "persons" for a plaintiff's constitutional harms under § 1983, but not based on *respondeat superior*. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978); *Est. of Jones by Jones v. City of Martinsburg,* 961 F.3d 661, 672 (4th Cir. 2020). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat*

*superior* theory." *Monell*, 436 U.S. at 691. Municipal liability arises *only* when city employees take constitutionally offensive acts in furtherance of the city's policy or custom. *Walker v. Prince George's County*, 575 F.3d 426, 431 (4th Cir. 2009).

Plaintiff's § 1983 claim does exactly what *Monell* prohibits. The Complaint's first cause of action is based only on a *respondeat superior* theory of liability. Plaintiff's allegations explain that particular officers acted wrongfully on August 28, 2020. Nowhere does Plaintiff allege that officers committed those constitutionally offensive acts in furtherance of a City policy or custom. For this reason alone, Plaintiff's § 1983 claim fails as a matter of law.

To survive a motion to dismiss based on Rule 12(b)(6), a claim must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, the court accepts all well-pled facts as true and construes those facts in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Nonetheless, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to plead a claim." *Walker.*, 575 F.3d at 431 (quoting *Iqbal*, 556 U.S. at 678).

Municipal liability results only when the municipality can be directly charged with fault for a constitutional violation. Thus, liability results only when a policy or custom is (1) fairly attributable to the municipality as its "own," and is (2) the "moving force" behind the particular constitutional violation claimed by the plaintiff. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987), *cert. denied,* 484 U.S. 1027 (1988).

There are three necessary elements for *Monell* liability. First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell*, 436 U.S. at 694); *see also Spell*, 824 F.2d at 1389. As interpreted by the Fourth Circuit, a "policy or custom" can manifest in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality. *Spell*, 824 F.2d at 1389; *see also Owens v. Baltimore State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability."). Third, the plaintiff must allege an affirmative causal link between the "policy or custom," and the particular injury suffered by the plaintiff. *Spell*, 824 F.2d at 1389.

In this case, there is <u>no</u> factual content pled in the Complaint that plausibly asserts the required elements for *Monell* liability.³ For this additional reason, the Complaint does not assert a viable § 1983 claim and the First Cause of Action should be dismissed.

---

³ Although the Complaint is not entirely clear on this point, it suggests potential § 1983 liability based on a failure to provide Plaintiff with Miranda warnings. *See* Compl., ECF No. 1-3, ¶ 58. Plaintiff's Complaint does not suggest that Plaintiff was interrogated and, therefore, Miranda warnings were not required. *Rhode Island v. Innis*, 446 U.S. 291 (1980). In addition, the failure to provide Miranda warnings does not support an action for damages under § 1983. *Vega v. Tekoh*, 142 S. Ct. 2095 (2022).

## II. THE PLAINTIFF'S BATTERY CLAIM FAILS AS A MATTER OF LAW BECAUSE THE CITY'S GOVERNMENTAL IMMUNITY APPLIES AND HAS NOT BEEN WAIVED.

Governmental immunity is that portion of the State's sovereign immunity that extends to local governments. *See Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). "The Supreme Court of North Carolina has held that governmental immunity provides a 'complete defense' that 'shields a defendant entirely from having to answer for its conduct at all in a civil suit for damages.'" *Davis v. City of Greensboro,* 770 F.3d 278, 281 (4th Cir. 2014) (citing *Craig ex rel. Craig,* 363 N.C. at 334, 678 S.E.2d at 354). As such, governmental immunity in North Carolina constitutes "an immunity from suit rather than a mere defense to liability." *Id.*

This immunity applies when a local government is performing governmental functions, such as providing police services, *Arrington v. Martinez*, 215 N.C. App. 252, 257, 716 S.E.2d 410, 414 (2011), or supervising police officers. *Houpe v. City of Statesville*, 128 N.C. App. 334, 341, 497 S.E.2d 82, 87, *disc. rev. denied*, 348 N.C. 72 (1998)*; see also Schlossberg v. Goins*, 141 N.C. App. 436, 440, 540 S.E.2d 49, 52 (2000), *disc. rev. denied*, 355 N.C. 215 (2002) ("[O]ur courts recognize law enforcement as a governmental function."). And a local government retains its governmental immunity unless waived. *Fullwood v. Barnes*, 250 N.C. App. 31, 37, 792 S.E.2d 545, 550 (2016).

North Carolina courts have determined that immunity is a jurisdictional issue and have decided immunity on subject matter and personal jurisdictional grounds. For this reason, federal courts have historically analyzed the motion under both grounds. *See Yarbrough v. East Wake First Charter Sch.*, 108 F. Supp. 3d 331, 336 (E.D.N.C. 2015) ("Under North Carolina law, governmental immunity presents a question of jurisdiction. The Supreme Court of North Carolina, however, has not resolved whether governmental immunity presents a defense to subject-matter

jurisdiction or personal jurisdiction. Thus, the court evaluates defendants' motion to dismiss for lack of jurisdiction under both standards." (citations omitted)); *Frye v. Brunswick County Bd. of Educ.*, 612 F. Supp. 694, 701 (E.D.N.C. 2009) (evaluating defendant's motion to dismiss under both governing standards of personal and subject matter jurisdiction because the jurisdictional issue has not been resolved in North Carolina courts). When jurisdiction is challenged in federal court under either Rule 12(b)(1) or Rule 12(b)(2), the plaintiff bears the burden to show jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied*, 503 U.S. 984 (1992) ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."); *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)("When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence.").

A plaintiff suing a sovereign entity must plead waiver of governmental immunity because without waiver, there may be no personal or subject matter jurisdiction and the court may not properly hear the case without jurisdiction. *See Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (4th Cir.), *cert. denied*, 474 U.S. 945 (1985) ("Federal courts are courts of limited jurisdiction . . . . Accordingly, plaintiffs must affirmatively plead the jurisdiction of the federal court.") (citations omitted). Therefore, a court must determine if the plaintiff's substantive arguments in the complaint affirmatively demonstrates the basis for waiver of governmental immunity. *See M Series Rebuild, LLC v. Town of Mount Pleasant*, 222 N.C. App. 59, 63, 730 S.E.2d 254, 257, *disc. rev. denied*, 336 N.C. 413 (2012).

The Complaint here makes no mention of the City's governmental immunity or any grounds for a waiver of that immunity. For this reason alone, Plaintiff's Second Cause of Action should be dismissed.

When a defendant challenges the factual predicate of subject matter jurisdiction, like the City has here, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768. Similarly, when considering whether a plaintiff has met his burden under Rule 12(b)(2), "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020), *cert. denied* 141 S. Ct. 1057 (2021).

Pursuant to N.C. Gen. Stat. § 160A-485(a), a city may waive governmental immunity in very limited ways, none of which apply here. A City may purchase liability insurance, participate in a local government risk pool, or create a self-funded reserve. N.C. Gen. Stat. § 160A-485(a); *see Schlossberg*, 141 N.C. App. at 440, 540 S.E.2d at 53. Statutes authorizing waiver of governmental immunity are "strictly construed against waiver." *Arrington*, 215 N.C. App. at 260, 716 S.E.2d at 416 (citation omitted). And immunity is waived only "'to the extent that the municipality is indemnified by an insurance contract or a local government risk pool,'" *Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 813 (E.D.N.C. 2015) (quoting *Clayton v. Branson*, 153 N.C. App. 488, 493, 570 S.E.2d 253, 256–57 (2002)), and "only to the extent specified in the council's resolution." N.C. Gen. Stat. § 160A-485(a).

The City does not participate in a risk pool. (Wilson Decl., ¶ 5.) In 1999, the Raleigh City Council adopted a resolution in accordance with its authority under N.C. Gen. Stat. §160A-485

that set forth guidelines for when the City would waive its immunity and the immunity of its officers for claims within the $1,000,000 self-funded reserve. (*Id.*, ¶ 10 and Exhibit B.) The resolution sets forth strict requirements that must be met before the City will agree to a limited waiver. *Id*. The City's resolution requires that a party to accept the limited damages contained in the resolution and agree to execute a release of all claims against all persons, firms, and corporations on account of the incident giving rise to the claim. (Wilson Dec. ¶ 11; McDonald Decl. ¶5); *see also Flood v. Crews*, 260 N.C. App. 456, 816 S.E.2d 535 (2018), *disc. rev. denied*, 822 S.E.2d 626 (2019). If a claimant does not satisfy the resolution's requirements, no waiver ever occurs. *See id*.; *Arrington*, 215 N.C. App. at 264, 716 S.E.2d at 418.

The Amended Complaint contains no allegation that the Plaintiff has executed the required release. The declarations of Wilson and McDonald further establish that Plaintiff has not agreed to the release of all claims, which is necessary to trigger any waiver. (D.E. 22-1, ¶ 14); (D.E. 22-2, ¶ 8) Moreover, the Complaint explicitly seeks damages beyond those permitted under the City's resolution. (D.E. 1-3, *Prayer for Relief*, seeking punitive damages and attorney's fees). Because the resolution's requirements have not been met, no waiver has occurred.[4]

Even when a municipality has purchased excess liability insurance, like the City has here, a "governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." *Hagans v. City of Fayetteville*, No. 5:14-CV-717-F, 2015 WL 4414929, at *5 (E.D.N.C. July 17, 2015) (citing *Patrick v. Wake County Dep't of Human Servs.*, 188 N.C. App. 592, 596, 655 S.E.2d 920, 923 (2008). Immunity is waived "only

---

[4] The City's immunity waiver guidelines are well established, having been analyzed repeatedly by the North Carolina courts. *See e.g., Arrington v. Martinez*, 215 N.C. App. 252, 716 S.E.2d 410 (2011); *Flood v. Crews*, 260 N.C. App. 456, 816 S.E.2d 535 (2018).

to the extent of coverage provided." *Wright v. Gaston County,* 205 N.C. App. 600, 606, 698 S.E.2d 83, 88 (2010); N.C. Gen. Stat. § 160A-485(a).

Here, the excess insurance policy in effect in August 2020 expressly preserved the City's governmental immunity, and through its explicit terms, provides no coverage. The excess policy included an endorsement entitled *North Carolina Governmental Immunity*, which states in full:

> **This Policy is not intended by the INSURED to waive its governmental immunity as allowed by North Carolina General Statutes Section 115C-42, Section 153A-435, Section 115D-24 or Section 160A-485, or any amendments thereof.** Accordingly, subject to this Policy and the Specific Excess Limits of Insurance as stated in the Declarations, this Policy provides coverage only for OCCURRENCES or CLAIMS for which the defense of governmental immunity is clearly not applicable or for which, after the defense is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable. This Policy does not apply to any amount for which the INSURED would not be liable under applicable governmental or sovereign immunity but for the existence of this Policy.

(Wilson Decl., ¶ 8 and Exhibit A at 110 (emphasis added).) This language unambiguously preserves the City's immunity and provides coverage for claims only when immunity does not apply. Based on the express terms of this endorsement, the excess policy excludes coverage for claims to which governmental immunity applies regardless of the amount of such claim. Therefore, the excess policy provides no coverage for Plaintiff's tort claims.

This excess policy provision is materially indistinguishable from other insurance policy provisions that the North Carolina appellate courts and the Fourth Circuit Court of Appeals have held explicitly and expressly preserved the policyholder's governmental immunity. *See e.g., Pryor v. City of Raleigh*, 247 N.C. App. 900, 788 S.E.2d 684 (2016);[5] *Evans v. Chalmers*, 703

---

[5] The policy provision at issue in *Pryor*, which mirrors the policy language, stated as follows: "This policy is not intended by the Named Insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 115C–42, Sec. 153A–435, or Sec. 160A–485, as applicable, or any amendments thereof." 247 N.C. App. 900, 788 S.E.2d 684 (2016).

10

F.3d 636, 655-56 (4th Cir. 2012)[6]; *see also, Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923; *Estate of Earley v. Haywood County Dep't of Social Servs.*, 204 N.C. App. 338, 343, 694 S.E.2d 405, 409-10 (2010). Plaintiff's Second Cause of Action is barred by immunity and should be dismissed.

### III. PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES FROM THE CITY.

Finally, Plaintiff seeks to recover punitive damages. (Compl., ECF No. 1-3, ¶¶ 108–110.) Such damages are unavailable against municipalities sued under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Iglesias v. Wolford*, 539 F. Supp. 2d 831, 841 (2008). The same is true under North Carolina law. *Iglesias*, 539 F. Supp. 2d at 841. Therefore, Plaintiff's request for punitive damages is further grounds for a dismissal.

### CONCLUSION

For the reasons set forth herein, the City respectfully requests that the Court dismiss Plaintiff's action in its entirety.

This the 15th day of November, 2023.

                                                  **CITY OF RALEIGH**
                                                  **Karen M. McDonald**
                                                  **City Attorney**

                         By:    /s/ Dorothy V. Kibler
                                Dorothy V. Kibler
                                Deputy City Attorney
                                N.C. Bar No. 13571

---

[6] The policy provision in *Evans* read as follows: "[T]his policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses is [sic] asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable." 703 F.3d at 655–56.

By: /s/ Mollie A. Grose
Mollie A. Grose
Associate City Attorney
N.C. Bar No. 60900
PO Box 590
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Dorothy.Kibler@raleighnc.gov
Mollie.Grose@raleighnc.gov
*Attorneys for the City of Raleigh*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00559-BO-RJ

| | |
|---|---|
| DELBERT QUILLEN WARD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE CITY OF RALEIGH, )<br>)<br>Defendant. ) | **CERTIFICATE OF SERVICE** |

I hereby certify that on the 15th day of November, 2023, I electronically filed the foregoing Memorandum in Support of Defendants City of Raleigh's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan Carnes
Tara Warwick
CarnesWarwick
555 Fayetteville Street, Suite 300
Raleigh, NC 27601
jonathan@carneswarwick.law
tara@carneswarwick.law
*Attorneys for Plaintiff*

Respectfully submitted,

                                                    **CITY OF RALEIGH**
                                                    **Karen M. McDonald, City Attorney**

By:    /s/ Dorothy V. Kibler
           Dorothy V. Kibler
           Deputy City Attorney
           N.C. Bar No. 13571
           PO Box 590
           Raleigh, NC 27602
           Tel: (919) 996-6560
           Fax: (919) 996-7021
           Dorothy.Kibler@raleighnc.gov
           *Attorneys for the City of Raleigh*